Santey, J.
On May 29, 1946, the Public Service Commission, on its own motion, instituted a proceeding to investigate and determine whether the rates and charges of Consolidated Edison Company of New York, Inc., for electric service are unjust and unreasonable, and if so found, to fix and determine just and proper rates and charges for such service. Hearings were had and testimony taken from time to time up to the 2d day of December, 1948, when the record was closed.
On December 30, 1948, the commission made the order under review, by which it fixed and established temporary rates for electric service, effective until final rates are established, by providing for a 10% reduction across the board in the rates charged by the company on the date of the order. The company petitioned for a rehearing and a postponement of the effective date of the temporary rates, which was January 10, 1949. The application was denied, and on January 18, 1949, the company brought this proceeding in the Supreme Court, Albany County, for a review of the commission’s order and determination under article 78 of the Civil Practice Act. The proceeding was transferred by order of the Special Term to this court for disposition on the merits.
The issues presented by the petition, the answer and the reply involve an interpretation of the provisions of section 114 of the Public Service Law, pursuant to which the commission is authorized to fix temporary rates. The provisions of this statute, so far as applicable here, are as follows:
1‘ § 114. Temporary rates
“ To facilitate prompt action by the commission in proceedings involving the reasonableness of the rates of any public utility and to avoid delay in any such rate proceeding, the commission is hereby authorized to require any public utility company to establish, provide and maintain continuing property records, including a list or inventory of all of the physical property actually used in the public service, and to require any public utility company to keep its hooks, accounts and records in such manner as to show currently the original cost of said physical property and the reserves accumulated to provide for the retirement or replaceumot-af sairl physical property.
‘ ‘ The commission may, in any such proceeding, brought either on its own motion or upon complaint, upon notice and after hearing, if it he of opinion that the public interest so requires, *478 immediately fix, determine and prescribe temporary rates to be charged by said utility company pending the final determination of said rate proceeding. Said temporary rates so fixed, determined and prescribed shall be sufficient to provide a return of not less than five per centum upon the original cost, less accrued depreciation, of the physical property of said public utility company used and useful in the public service, and if the duly verified reports of said utility company to the commission do not show the original cost, less accrued depreciation, of said property, the commission may estimate said cost less depreciation and fix, determine and prescribe rates as hereinbefore provided.”
It is not disputed that the company maintained continuing property records, and that it kept its books in such a manner as to show currently the original cost of its physical property and the reserves accumulated to provide for the retirement or replacement of said physical property, and that such books and records set forth these items in such amounts as were determined by the judgment and accounting practice used by the management of the company. It is also conceded that the company filed with the commission verified quarterly reports, on forms furnished by the commission, containing all of this information as shown on the books and records of the company.
Without going into detail and using approximate round figures, it is sufficient to point out that in the verified report of the company for the quarter ending September 30, 1948, the amount set forth for original cost of physical property less depreciation reserves, was $653,000,000. In arriving at this figure the amount deducted for depreciation was $160,000,000. In determining the base for fixing the temporary rates the commission accepted the book figures of the company as contained in this report, excepting only the item of depreciation. On this item the commission added to the amount of depreciation shown in the report the sum of $95,000,000, with the result that the original cost of the physical property less depreciation, as fixed by the commission, was reduced to $558,000,000. Computed on a net physical property valuation of $558,000,000, as fixed by the commission, the temporary rates, based on the amount of electric service sold during the base year ending September 30, 1948, would produce a return of more than the 5% provided by statute, but computed on the valuation of $653,000,000 shown on the books -of the company, the return would be only 4.63%.
*479 The company contends that the commission had no power or authority to estimate the original cost of the physical property less accrued depreciation for the purpose of fixing a base for computing the 5% minimum return, but was required to take the book figures of the company as shown in its quarterly reports to the commission. It further contends that the act of the commission in making such estimate was ultra vires, and that the temporary rates based thereon are illegal and void.
The Public Service Commission was created by statute and it may exercise only such powers as are conferred upon it by the Legislature. The Legislature has the right to delegate to the commission the power to perform certain duties, but the commission can act only within the scope of the power so delegated, either expressly or by necessary implication. (Matter of the Village of Boonville v. Maltbie, 272 N. Y. 40; Matter of the City of Syracuse v. Gibbs, 283 N. Y. 275.) In the exercise of the powers thus conferred, the commission is required to act within the framework of the statute, both as to the authority granted and the limitations imposed. The sole authority of the commission to fix temporary rates is contained in the provisions of section 114 of the Public Service Law. The problems presented on this review require an interpretation of the meaning of the provisions of that section.
In interpreting the provisions of a statute the language used should be given the usual and ordinary meaning, read in the light of the purpose sought to be accomplished by the act. (Cooper-Snell Co. v. State of New York, 230 N. Y. 249; Matter of Brooklyn Edison Co. v. Davidson, 269 N. Y. 48; Wiley v. Solvay Process Co., 215 N. Y. 584.) The headline to section 114 is 11 Temporary rates ”. This indicates that the entire statute is designed to apply to that subject only, and that all of its provisions are integrated and must be considered together. The opening sentence of the text indicates that the purpose of the statute is to facilitate prompt action and avoid delay in rate proceedings, and to that end it provides that the commission may require any utility company to maintain continuing property records and to keep its books, accounts and records in such a manner as to show currently the original cost of its physical property and the reserves accumulated to provide for the retirement or replacement thereof.
It next authorizes the commission to fix temporary rates when in its opinion public' interest so requires. Then, for the protection of the public utility, it provides that such temporary rates should be sufficient to produce a return of not less than *480 5% upon the original cost, less accrued depreciation, of the physical property used and useful in the public service. This last provision, read in conjunction with the provisions in the preceding paragraph of the statute relative to the requirement that the utility company keep books and records to show original costs and accumulated reserves, clearly indicates that the Legislature intended that the base figure on which the 5% minimum return was to be computed, should be determined by taking the valuations placed on the items involved by the utility company in the regular course of its business and in accordance with the business judgment and accounting practice adopted by the management.
By these provisions of the statute the Legislature has provided a quick and reasonably accurate method of fixing the minimum return under a temporary rate by the use of figures that can be readily obtained by reference to the books and records of the company. As was said by Judge Crane in Matter of Bronx Gas & Electric Co. (271 N. Y. 364, 373): “ At least there is some accuracy in these figures; they can be fixed with some certainty and are not dependent altogether upon speculative expert opinion.”
Finally, the Legislature, anticipating that cases' might arise where, through failure to follow prescribed accounting practices, the duly verified reports to the commission would not show the factors of original cost and accrued depreciation, or one of them, provided that in such cases the commission be empowered to estimate as to either of these factors not shown. In the case at bar the reports of the company did show original cost and the amount of depreciation it had accrued on its books as the same had been determined and set up by the company in the regular course of business, and if the accounting practices involved were faulty or inadequate the commission had long had full jurisdiction to investigate and modify in a proper proceeding. (Public Service Law, § 66, subds. 9, 11.)
The commission appears to contend that the term, “ accrued depreciation,” as used in the statute, means depreciation which is adequate in amount, and that whenever in the opinion of the commission the depreciation set up on the books and records of the company is inadequate, the commission is empowered to resort to an estimate. There is nothing to support this contention, either in the language of the statute or in the purpose for which it was enacted. The statute deals only with temporary rates. It has no application to permanent rates. The essential elements, in the judgment of the Legislature, necessary for *481 fixing temporary rates, are prompt action, factual information readily ascertainable from proper records, and a reasonable return fixed at not less than 5%. The phrase, “ accrued depreciation,” used in the second paragraph of the statute, is tied in with the phrase, “ reserves accumulated to provide for the retirement or replacement of said physical property, ’ ’ contained in the first paragraph, and the two phrases must be read together. Thus treated it becomes evident that the Legislature is referring to the same thing by both phrases.
To permit the commission to resort to an estimate whenever in its judgment the amount of accrued depreciation as set up and carried on the books of a utility company is insufficient would destroy the whole pattern of section 114.
The determination of the proper amount to be charged for depreciation of property is one of the most troublesome problems in the field of accounting. More than a half dozen recognized methods of computing depreciation are in use by accountants. If all of these methods were applied to the same problem as many different results would be produced as there were methods employed. If the contention of the respondents were sustained the commission could always resort to an estimate by the simple expedient of adopting a method of computing depreciation which would produce an amount in excess of that produced by the method used by the utility. In result this would be the grant of an arbitrary power to determine the temporary rate. The Legislature neither contemplated nor provided for such a result.
In his memoranda accompanying the order under review, the chairman of the commission states that reported book figures without modification are not the proper basis for determining temporary rates. It is not the function of the commission or of the courts to decide what basis is proper for the fixing of temporary rates. That function belongs to the Legislature alone, and it could prescribe any basis which in its judgment it deemed proper and suitable. We are not concerned here with what the Legislature could or should have done. We are concerned only with what it actually did.
It has been suggested that because the recoupment clause contained in the third paragraph of section 114 provides for the restoration, through the permanent rate, of any loss which the company might suffer through the imposition of inadequate temporary rates, the company should not be heard to complain because the temporary rates under review were not fixed in accordance with the requirements of the statute. The recoup *482 ment provision has no such effect. In the first place, it is designed to provide for the adjustment of rates legally imposed. In the second place, the power to grant restoration cannot confer upon the commission in the imposition of a rate, powers which the Legislature has withheld, nor give it a free hand to ignore the limitations of the statute. The commission was without authority to fix temporary rates except in conformity with the provisions of the law. Recoupment could no more legalize an illegal rate than in the field of criminal law could the restoration of stolen property legalize the larceny by which it was taken.
One other matter merits brief comment. During the base year the company, under a directive of the commission, had charged to operating expense an item of $22,795,888, for depreciation on its electric properties. In computing the company’s return on its operations under the temporary rates imposed, the commission deducted the sum of $2,279,000 from this item of depreciation as charged on the books of the company, thereby automatically increasing its operating income by the amount of the deduction. Thus increased, the income return would be substantially advanced toward the 5% minimum provided by statute. The reason assigned for the action was that the $95,000,000, added to accrued depreciation on the commission’s estimate, increased the depreciation account to such an amount that the annual additions to this account out of operating expenses should be reduced, and on the opinion of an expert, the commission fixed the reduction at $2,279,000. There is no power or authority conferred upon the commission to justify such action in connection with the fixing of temporary rates, or in computing the return to the company under such rates.
The commission acted beyond its powers and authority in estimating the cost, less accrued depreciation, of the company’s physical property. Its acts in fixing the temporary rates were ultra vires, illegal and void. The commission’s order of December 30, 1948, should be annulled and set aside.