Robert W. Sloan, J.
Plaintiffs seek an injunction to compel restoration of damage done as a result, and to prevent the repetition, of an alleged trespass by the defendant.
The parties to this action are adjoining landowners on the east shore of Skaneateles Lake near the hamlet of Fair Haven in Cortland County. A peninsula extends southwesterly from the defendant’s lands on the north to a point in front of the plaintiffs’ shore line. In this manner it forms a roughly triangular cove, the apex being at or near the point of connection of the peninsula with the defendant’s mainland. Its mouth, to the south, is approximately 175 feet wide, its east side about 200 feet long, the south 60 feet of which is along the plaintiffs’ shore line, and the west side about 250 feet long. Upland vegetation and willow trees are found on the central portion of the peninsula, and it remains dry during high-water periods. It has existed in substantially this manner for at least the last century.
The plaintiffs, in the year 1957, built an earthen causeway across the mouth of the cove from their uplands to those of the peninsula. The north line of the causeway followed the plaintiffs’ north property line, which is the common property line, extended westerly to the peninsula. It was approximately 50 feet in width and of sufficient height to prevent the natural flow of water into the cove at any time.
In 1958 the defendant restored the middle portion of the cove to approximately its original depth by removing a portion of the fill placed there by the plaintiffs in building the causeway. This is the only act of trespass alleged in the plaintiffs’ complaint to have been committed by the defendant. They seek an injunction directing the restoration of the causeway to its original condition, and against a repetition of the alleged trespass by the defendant.
Skáneateles Lake is a body of water about 15 miles long, generally about 1 mile wide, with a surface area of about 13 square miles and a watershed of about 75 square miles. For many years it has been navigable by steamboats and other craft. In 1843 the waters of the lake, and its outlet, were appropriated by the Canal Board of the State of New York, under legislative authority, as a reservoir and feeder for the Brie Canal. Later *453 the City of Syracuse and other communities have, under proper authority, been permitted to take waters from the lake. Since 1843 the level of its waters has been artificially controlled by a dam and floodgates at the outlet. Neither soverign nor subject own the waters of the lake, but all have the right to its use. Subject to the right of the soverign to divert and use the waters in such quantity as may be necessary for the use and operation of the Erie Canal, the rights of all other riparian owners are equal. (Sweet v. City of Syracuse, 129 N. Y. 316; City of Syracuse v. Stacey, 86 Hun 441; Matter of City of Syracuse v. Gibbs, 283 N. Y. 275.)
In this action, we find that the Syracuse Water Department, since about 1920, controls the release and retention of lake waters at the outlet. To prevent prolonged flooding of the lands of littoral or riparian owners, it attempts to reduce the lake level to 863.27 feet above sea level by June 1, and hold it between this level and 861.50 feet until September 15, and thereafter between 859 feet and 860 feet above sea level. The normal cycle is that the spring thaws and rains bring the lake to its high level usually in April, May or June, but on rare occasions as early as January and February or as late as July. The reduction of the lake level to 863.27 feet above sea level is accomplished by permitting the surplus waters to flow in large quantities over the dam at the outlet. Thereafter, a gradual reduction results from the release of required amounts of waters, by the uses made of the waters by the City of Syracuse and other communities, and by evaporation.
The records showing the level of the waters of Skaneateles Lake above sea level for various periods, and for dates hereinafter referred to were received in evidence. For the period 1890 to 1900, both inclusive, the high of 864.10 feet occurred on March 9, 1893, and the low of 857.2 feet occurred on December 3, 1891. The average high for the period was 862.50, and the average low was 858.72 feet. For the period 1921 to 1929, both inclusive, the high of 864.60 feet occurred on July 2, 1922, and the low of 860.20 feet occurred on October 28,1928. The average high for the period was 863.12 feet, and the average low was 861.04 feet. For the period 1949 to October 21,1959, both inclusive, the high of 863.39 feet occurred on April 11, 1959, and the low of 857.81 feet occurred on February 15, 1954, and this was an all-time low. The average high for the period was 862.85 feet, and the average low was 859.55 feet. The lowest water level usually occurs in December or January, but on rare occasions in October and November.
*454 Photographs in evidence show lake water within the cove at above sea level height of 863.02 feet, 862.95 feet and 862.93 feet. A photograph taken on October 4, 1958 shows a south portion of the causeway partially removed with water on the lake, or south side thereof, and a pool on the north side within the cove. The steam shovel operator testified that there appeared to be about one foot of water on each side of the causeway at this time, but that when the cut-through was made water flowed northerly from the lake into the cove. On this date the water level was 861.94 feet. Other photographs show the cove and the lands immediately in front of the plaintiffs’ premises free of water at a level of 860.35 feet. Witnesses, claiming long-time acquaintance and observation with the area, testified that at or near high-water periods, which may last for six or seven months, rowboats negotiate the cove from the defendant’s lands, pass southerly in front of the plaintiffs’ land, and from thence to the open and deeper waters of the lake and return in the same manner. During low-water periods the bed of the cove, and in front of the plaintiffs’ lands, is either marshy or dry, depending on the lake level at the time.
From the above facts it is found that while the time, extent and duration of lake waters within the cove and in front of the plaintiffs ’ premises cannot be predicted with certainty, the cycle which brings water into the area, the presence of water there from three to seven or eight months, and the gradual recession of the water therefrom, leaving the bed either marshy or dry, can be relied upon and does occur each year. The lake water enters this area by percolation or flow when the level of Skaneateles Lake reaches approximately 861 feet or above. The average low-water mark for the 31 years above considered is 859.77 feet, and this does not touch any part of the area within the cove or covered by the causeway. Therefore, the point at which the alleged trespass occurred is a part of Skaneateles Lake between high-water mark and low-water mark, wherever these marks may be.
The plaintiffs maintain that the common boundary line, which is described as running “ to the water line of Skaneateles Lake ” in the deed to their predecessor in title from the common source of title of both owners and parties to this action, continues in a straight line across the mouth of the cove and thence across the uplands of the peninsula until the low-water mark of the lake is reached. The defendant maintains that the common boundary line runs at some angle from the point where it reaches the shore on the east side of the cove which will result in an equitable division of the off-shore area, so as to preserve the funda *455 mental riparian right of each landowner of access to the waters of the lake; and that any such line cannot include any portion of the peninsula as a part of the plaintiffs’ lands. Decision here does not depend on the location of the common boundary line, or the point to which it runs in the lake. The only question presented for determination is whether the plaintiffs have the right to build and maintain a causeway across the mouth of the cove between high and low-water marks, and prevent the natural flow of water into the cove thereby denying defendant access to th,e lake.
The defendant is a riparian owner on Skaneateles Lake, and as such is entitled to the use of the water in the lake as it is wont by nature to flow, without material alteration or change, and to the exercise and enjoyment of all uses to be made thereof. (Hammond v. Antwerp Light & Power Co., 132 Misc. 786; Matter of Van Etten v. City of New York, 226 N. Y. 483.) The causeway built by the plaintiffs interferred with the defendant’s riparian rights. In removing it the defendant but asserted her right to the natural flow of the water, and access to the lake proper. (Clinton v. Myers, 46 N. Y. 511; City of Lockport v. McCollum, 235 App. Div. 106.) If she was overly-zealous in this action of self-help and removed a greater width of the causeway than necessary for such purpose, the plaintiffs will not be heard to complain as equity does not make adjustments between wrongdoers.
The defendant should have judgment against the plaintiffs dismissing the complaint herein, with costs, and I direct the entry of judgment accordingly.