In the Matter of FREDERICK J. RELLA et al., Petitioners, v PETER A. A. BERLE, as Commissioner of the Department of Environmental Conservation of the State of New York, et al., Respondents. (Proceeding No. 1.)

In the Matter of WEST BRANCH CONSERVATION ASSOCIATION, INC., Petitioner, v PETER A. A. BERLE, as Commissioner of the Department of Environmental Conservation of the State of New York, Respondent, and SPRING VALLEY WATER COMPANY, INC., Intervenor-Respondent. (Proceeding No. 2.)

Third Department, August 4, 1977

*Harvey S. Barr* and *David Sive* for Frederick J. Rella and others, petitioners.

*Winer, Neuburger & Sive (David Sive, Harvey S. Barr* and *Beth Wortman* of counsel), for West Branch Conservation Association, Inc., petitioner.

*Louis J. Lefkowitz, Attorney-General (Julius Feinstein* and *Ruth Kessler Toch* of counsel), for Peter A. A. Berle, respondent.

*Onofrio F. Laurino* for intervenor-respondent.

KANE, J. Spring Valley Water Co., Inc. (Spring Valley) is a

private company which supplies water to most of Rockland County from two impounding reservoirs and 55 wells located in the county. In addition, five previously approved new wells were scheduled for completion by 1977. Demands upon Spring Valley for water have steadily increased along with the county's dramatic population growth from approximately 50,000 persons in 1959 to about 219,000 in 1976. During this period requirements for water rose from 5,000,000 gallons per day (mgd) to about 23,000,000 gallons daily. Projected population growth from reliable sources indicated an expected increase in future consumption beyond Spring Valley's capacity to produce without obtaining an additional source of supply. Extensive explorations, drilling, testing and evaluation of findings within the Ramapo River Watershed resulted in the conclusion that the stratified glacial drift emanating from the last retreat of glacial ice provided an adequate underground reservoir and aquifer for water-bearing material in the Ramapo Valley. Armed with this information, Spring Valley filed a water supply application with the Department of Environmental Conservation on December 23, 1974, proposing to develop a series of 10 wells in an area known as Ramapo Valley Well Field to produce an average yield of 8 to 10 mgd with a peak capacity of 14 mgd at a total estimated cost for the entire new facility of approximately $2,500,000. A number of objections were filed by various entities from the States of New York and New Jersey. Hearings on the water supply and a related application were conducted commencing on June 18, 1975, and thereafter on various dates until March 2, 1976. At the conclusion thereof, the hearing officer filed a comprehensive and detailed report of his findings of fact and conclusions, along with specific recommendations that provided numerous safeguards to overcome some of the objections voiced by those testifying at the hearings in opposition to the proposal contained in Spring Valley's application. This report was adopted and incorporated by reference, *in toto,* as the decision of the Commissioner of the Department of Environmental Conservation, and it was duly filed on September 15, 1976. Thereafter, on November 11, 1976, the petitioner Frederick J. Rella, as Mayor, and on behalf of the Board of Trustees in the Village of Suffern (Village), commenced in article 78 proceeding. On November 15, 1976, the West Branch Conservation Assoc., Inc., (West Branch) followed suit by instituting a similar proceeding to annul the commissioner's decision

herein as arbitrary and capricious, an abuse of discretion, and not supported by substantial evidence. Both proceedings were consolidated and transferred to this court for determination.

In these proceedings the petitioners have mounted a three-pronged attack. The Village claims that the commissioner's decision, when measured against existing statutory criteria, does not meet the requirements of substantial evidence and that the evidence presented was so speculative it renders the determination arbitrary and capricious. It is West Branch's position that the department failed to consider acceptable alternatives to the proposal advanced by Spring Valley and that it was under an affirmative duty, statutorily imposed, to independently seek such alternatives. It is also argued that the commissioner failed to make proper findings of fact as required by law.

These contentions may be summarily resolved. A reading of the commissioner's decisions reveals that he clearly and concisely evaluated the issues presented and, upon conflicting testimony, came forth with well-reasoned conclusions based upon specific and comprehensive findings in a rather technical area for which he and the hearing officer exhibited the experience and specialized knowledge necessary to make such determinations. West Branch's attempt to read into the State policy, as it relates to the conservation of natural resources, certain affirmative duties on the part of the department is unavailing (NY Const, art XIV, § 4; Environmental Conservation Law, § 15-1503, subd 4). The commissioner must determine whether the applicant has fulfilled its burden of proof and render his decision accordingly. Moreover, it is abundantly clear that the alternatives of developing new surfaced reservoirs or redesigning and expanding present facilities were fully considered and rejected as excessively expensive, time-consuming and uncertain in ultimate benefit. The estimate for developing a new surface reservoir was $35,000,000. The cost was not only prohibitive, but such a project presented a greater likelihood of interference with the water supply of other municipalities.

In outlining the standards to be met for a successful application for a new water supply, the statutory provisions speak in terms of "public necessity", alternate sources, "adequate supply", the "equitable" consideration of other municipalities affected, and the payment of damages should the implementation of an approved application so require (Environmental

Conservation Law, § 15-1503, subd 4). It is asserted by the Village that these standards, together with the rather broad statement of policy contained in the statute (Environmental Conservation Law, § 15-0105), furnish the measure by which the substantial evidence rule must be applied in this proceeding. In support of this stance, it argues that no consideration was given to the needs of the Village of Sloatsburg or the Sterling Forest Corporation, both situated upstream from the proposed well field. It should be noted that no testimony on behalf of these entities was presented at the hearing, but the hearing officer, based on other evidence in the record, did find that the Village of Sloatsburg's needs would be adequately served by another source until the year 2020, and that there was no showing that the yet unapproved Sterling Forest Corporation's proposed community would adversely affect present users. From the testimony it did appear that the development of Sterling Forest is highly speculative and that, in any event, it may have a means of obtaining a supply without diverting waters from the Ramapo River.

The Village steadfastly maintains that the approved drilling and removal of water from the Ramapo River aquifer will draw down the level of water in the aquifer beneath the Village's own well field and will interfere with the flow of the river itself to the extent that it will impair both the Village water supply and its sewage disposal capability. There is substantial evidence in the record to support a contrary conclusion. Allowing for a reasonable margin of error, the estimated 2,000,000,000-gallon content of the aquifer and the proposed withdrawal rates of Spring Valley should adequately protect the Village's supply. The commissioner recognized that there can be no guarantee that the well field he sanctioned will not affect the Village's water supply; however, it also appears that uncertainty is part of the nature of ground water hydrology. It was to provide for such a contingency that the commissioner attached conditions to the approval of the application which require Spring Valley to protect the Village's supply and perform such alterations as will effectuate that purpose at no cost to the Village. Similarly, restrictions and conditions were imposed upon Spring Valley's pumping operations to assure a rate of flow in the Ramapo River sufficient to fulfill the requirements of the Village sewage disposal plant as currently operated. A gauging station installed downstream will measure the flow of the river to indicate whether it is

approaching the minimum needed to supply an adequate assimilative capacity for the Village's sewage effluent. If the flow falls to 8 mgd, the pumping operation of Spring Valley will cease. It was the considered opinion of Spring Valley's expert that such a rate of flow would provide a sufficient cushion to prevent the river flow from going below minimum requirements. While there was a conflict of expert opinion on this issue, there was substantial evidence to support the determination that, subject to the aforesaid conditions, the proposed well field will not have an adverse effect on the Village's sewage discharge. In our view, the "public necessity" standard was met and the additional protective facilities were completely justified (*Matter of Ton-Da-Lay v Diamond*, 44 AD2d 430, mot for lv to app den 36 NY2d 856; *Matter of Spring Val. Water Works & Supply Co. v Wilm*, 14 AD2d 658). The impressive expert testimony presented by Spring Valley, evaluated and interpreted by those with the necessary expertise, plainly supports the administrative determination made herein (*Matter of Stork Rest. v Boland*, 282 NY 256; *Matter of Sunhill Water Corp. v Water Resources Comm.*, 32 AD2d 1006; *Matter of Swan Lake Water Corp. v Water Resources Comm.*, 31 AD2d 44, mot for lv to app den 24 NY2d 737).

The determination should be confirmed, and petitions dismissed, without costs.

KOREMAN, P. J., MAHONEY, LARKIN and HERLIHY, JJ., concur.

Determination confirmed, and petitions dismissed, without costs.